IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ERIC B. JACKSON, #667808 | § | |
| VS. | § | CIVIL ACTION NO. 6:11cv639 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Eric B. Jackson, a prisoner confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on November 28, 2011. On July 12, 2012, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden William Motal, Nurse Kelly Maxwell and Regional Grievance Coordinator Lorie Parker. All of the witnesses testified under oath.

Plaintiff complained about an incident that occurred on April 7, 2010. Officers Douglas and Clark were passing out meals in administrative segregation. Officer Douglas attempted to give Plaintiff a pork free meal that belonged to another inmate. The food tray had another inmate's name on it. Plaintiff refused to accept the food tray. Douglas became upset and slammed the food slot door

1

onto Plaintiff's left hand, breaking his index finger. Clark observed the incident. Plaintiff complained that Clark did nothing to stop the assault and failed to report the fact that Douglas slammed the food slot door on his left hand.

Warden Baker, Major Bowan and Lt. Statham were subsequently in the area. Plaintiff tried to get their attention. He was ignored until he kicked on the door. Plaintiff showed them his finger and stated that he needed medical assistance. Lt. Statham told him to "chill out" and he would get medical attention. The Plaintiff complained that he did not receive medical care until about five hours later.

Plaintiff was transported to the medical department and placed in a holding cage. He was seen by Nurse Amanda Haynes. She provided him Ibuprofen and ice for his finger. She told him that she would get a doctor. Plaintiff testified that he did not see a doctor until a week later. Dr. Gary Wright ordered x-rays. He would not prescribe pain medication. Dr. Wright subsequently told him that the tip of his left index finger was broken. Plaintiff complained that he still would not prescribe him pain medication nor a cast.

Plaintiff testified that he included a number of people as defendants because he was told that it was necessary to include them, including Director Brad Livingston, Warden Dwayne Dewberry, Grievance Investigator Tammy Rainy, Region II Grievance Investigator Cheryl Lawson, Nurse Tara Patton (spelled in the complaint as "Hatton") and Nurse Myra Walker. He indicated that he wanted to dismiss them.

Nurse Kelly Maxwell testified under oath from the Plaintiff's original medical records. The records reveal that Plaintiff was seen around 4 p.m. on April 7, 2010. X-rays revealed that Plaintiff had a fracture to the tip of his index finger. He testified that Ibuprofen was prescribed on a number of occasions. Dr. Wright did not prescribe anything stronger. Nurse Maxwell noted that narcotics are

2

prescribed only in the most extreme cases. Plaintiff's index finger was wrapped to an adjoining finger to heal. Nurse Maxwell explained that casts are not used for this type of injury and that wrapping the fractured finger to an adjoining finger is the only remedy that is normally used.

Plaintiff gave the Court permission to review his authenticated medical records that were supplied at the hearing. The records confirm that he was seen by Nurse Haynes for a smashed finger at 4:05 p.m. on April 7, 2010. Plaintiff was able to move his finger, but he added that it was sore. She gave him a three day supply of Ibuprofen. Nurse Laningham observed that Plaintiff's finger was swollen, bruised and lacerated on April 10, 2010. Plaintiff reported numbness to her. She scheduled Plaintiff to see a medical provider. The records show that Dr. Wright examined Plaintiff on April 13, 2010. Plaintiff complained about numbness but no pain. Dr. Wright observed a contusion with 100% range of motion. He scheduled Plaintiff for an x-ray. On May 11, 2010, Dr. Wright noted that x-rays revealed a fracture to the distal phalanx, but the fracture did not extend to the joint. His analysis was a non-displaced fracture to the distal left phalanx, index finger. His plan was to tape the finger, which was referred to as "buddy system tapping," and to advise Plaintiff of the extent of the damage. The Plaintiff was scheduled for a follow-up exam on July 26, 2010. The records stated that Plaintiff refused to attend the follow-up exam. The entry specified do not reschedule.

<u>Discussion and Analysis</u>

The first issue for consideration is Plaintiff's desire to dismiss Director Brad Livingston, Warden Dwayne Dewberry, Grievance Investigator Tammy Rainy, Region II Grievance Investigator Cheryl Lawson, Nurse Tara Patton and Nurse Myra Walker. A plaintiff is entitled to voluntarily dismiss a case before the opposing party serves either an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1). These defendants have not filed an answer or any other responsive pleading in the case. The motion to dismiss should be granted.

The next issue for consideration concerns Officer Douglas closing the food slot door on Plaintiff's hand. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

In the present case, Plaintiff has alleged facts supporting a conclusion that Officer Douglas arguably subjected him to excessive use of force. Plaintiff should be permitted to proceed with an excessive use of force claim against Officer Douglas.

Plaintiff complained that Officer Clark did not stop the assault nor report it. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The Supreme Court recently held that "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in another's misconduct. *Id.* Officer Clark

may not be liable just because he was there at the time of the assault and took no steps to stop it nor report it to supervisory officials. The claim against Officer Clark fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim against Officer Clark should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The same thing would be true with respect to any other prison official who may have been told about the use of force incident and failed to take any remedial steps. The doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). In *Ashcroft v. Iqbal*, the Supreme Court referred to the concept of supervisory liability in a civil rights lawsuit as a "misnomer." 129 S.Ct. at 1949. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied with respect to any supervisory official.

Plaintiff also complained about the medical care he received for his injury. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the present case, Plaintiff was examined and provided medical care. He was provided Ibuprofen. He does not have a basis for a potentially meritorious civil rights lawsuit because he wanted a stronger medication, such as a narcotic. Dr. Wright ordered an x-ray, which revealed a fracture to the tip of Plaintiff's left index finger. He had the finger wrapped to an adjoining finger. Nurse Maxwell explained that casts are not used in such situations. The primary concern the Court has about the medical care that was provided involves delays. For example, Plaintiff had to wait several hours before seeing a nurse, then he had to wait a few more days to see Dr. Wright and then wait another month before having the fracture confirmed and his finger wrapped. The facts attributed to Dr. Wright, however, do not support an inference of deliberate indifference. Dr. Wright treated Plaintiff. He had Plaintiff's finger x-rayed and wrapped. Plaintiff has not shown that he experienced substantial harm due to any delays caused by Dr. Wright or anyone else. Plaintiff's medical claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The medical claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that Plaintiff may proceed with his excessive use of force claim against Officer Jacob W. Douglas. It is further

**ORDERED** that Plaintiff's claims against Director Brad Livingston, Warden Dwayne Dewberry, Grievance Investigator Tammy Rainy, Region II Grievance Investigator Cheryl Lawson, Nurse Tara Patton a.k.a. Hatton and Nurse Myra Walker are **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). It is finally

**ORDERED** that the Plaintiff's claims against the remaining Defendants are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **12** day of **July, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE